**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**ASHLEY S.[1],**

                              **Plaintiff,**

**v.**
                                                          **19-CV-1033**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

—————————————————————

## DECISION AND ORDER

            Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. No. 15.  Ashley S. ("Plaintiff"), who is represented by counsel, brings this

action pursuant to the Social Security Act ("the Act") seeking review of the final decision of

the Commissioner of Social Security ("the Commissioner") denying her application for

benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C.

§ 405(g).  Presently before the Court are the parties' competing motions for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 7,

13.  For the following reasons, Plaintiff's motion (Dkt. No. 7) is denied, and the

Commissioner's motion (Dkt. No. 13) is granted.


## BACKGROUND

            On November 4, 2015, Plaintiff filed for Supplemental Security Income

("SSI") and Disability Insurance Benefits ("DIB"), alleging disability beginning on February

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management
of the Judicial Conference of the United States, which the Western District of New York adopted in
November 2020 to better protect personal and medical information of non-governmental parties,
this Decision and Order will identify the plaintiff using only her first name and last initial.

1, 2013, due to epilepsy, arthritis, chronic pain, depression, asthma, and other conditions. Tr. at 149, 274-75, 276-84, 319.[2]  Plaintiff's application was denied at the initial level and she requested review.  Tr. at 155-58, 171-72.  Administrative Law Judge Marilyn D. Zahn ("the ALJ") conducted two hearings relating to Plaintiff's alleged disability, one on January 5, 2018, and a second on August 3, 2018.  Tr. at 15.  Plaintiff, who was represented by an attorney, testified at the first hearing, as did her boyfriend and an impartial vocational expert ("VE").  Tr. at 15, 41-96.  An independent medical expert ("ME"), Dr. Mark Stevens, and a second impartial vocational expert testified at the second hearing.  Tr. at 15, 97-122. On March 12, 2019, the ALJ issued a decision in which she found that if Plaintiff stopped using substances, she would not be disabled, and, therefore, she was not eligible for benefits.  Tr. at 15-32.  The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-5.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## LEGAL STANDARD

**Determining Whether a Claimant is Entitled to DIB and SSI**

The Commissioner shall not authorize DIB unless a claimant proves that she is disabled under the Act.  To prevail on a claim for DIB, a claimant must provide medical and other evidence to establish that she became disabled before expiration of her Title II insured status.  *See generally* 42 U.S.C. § 423.  Evidence of an impairment which reached

---

[2]Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 4.  A supplemental transcript ("Supp. Tr.") appears at Docket No. 5.

disabling severity after an individual's insured status has expired, or which was exacerbated after such expiration, "cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired."  *Davis v. Colvin*, No. 6:14-CV-06373 (MAT), 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016) (citing *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989)) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.'... [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits.") (internal citations omitted)).  Moreover, a claimant must show through objective medical evidence that she became disabled prior to the expiration of insured status; she cannot sustain her burden of proof solely by means of conclusory, self-serving testimony that she was disabled at the crucial time.  *Gonzalez v. Schweiker*, 540 F. Supp. 1256, 1258 (E.D.N.Y. 1982); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977).

There is no parallel insured status requirement for SSI.  To receive SSI under the Act, a claimant must establish through medical evidence that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 1382c(a)(3)(A), (a)(3)(H)(i).  For both DIB and SSI claims, the evidence must show that the claimant is unable to work due to a physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(5)(A).  Such impairments must be expected to result in death or have

3

caused or be expected to cause disability for a continuous period of at least 12 months. *Id*.; 20 C.F.R. §§ 404.1509, 416.909.  The claimant's impairments must also be so severe that she is unable to do her past work or any other substantial gainful work existing in significant numbers in the national economy based on her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

According to the Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  Drug addiction or alcoholism is "material" if the individual would not be found disabled if she stopped using alcohol or drugs.  *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

The Commissioner determines disability using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 404.1527(d)(1), 416.927(d)(1).  The burden of showing that the claimant can perform other work existing in significant numbers in the national economy is on the Commissioner; however, the burden of proving disability is always on the claimant.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought.") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the

evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).


## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process.

*Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008)

(detailing the five steps).  The ALJ found that Plaintiff met the insured status requirements

of the Act through June 30, 2013.  Tr. at 18.  At step one, the ALJ found that Plaintiff has

not engaged in substantial gainful activity since February 1, 2013, the alleged onset date.

Tr. at 18.  At step two, she found that Plaintiff had the following severe impairments:

cannabis use disorder, seizure disorder, opioid dependency disorder, depressive disorder,

sciatica, bilateral carpal tunnel syndrome – mild, asthma, and COPD.  Tr. at 19.[3]


At step three, the ALJ concluded that Plaintiff's impairments did not, either

individually or in combination, meet or equal the Listings, giving special consideration to

Listing 1.04 (Disorders of the Spine), Listing 3.02 (Chronic Respiratory Disorders), Listing

3.03 (Asthma), Listing 12.04 (Depressive, Bipolar and Related Disorders), and Listing

12.06 (Anxiety and Obsessive-Compulsive Disorders).  Tr. at 19-20.  The ALJ found,

based on the entire record and the VE's and ME's testimony, that given her substance

---

[3] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at
length in the papers.

abuse disorders, there were no jobs that existed in significant numbers in the national economy that she could perform.  Tr. at 21-23.

The ALJ went on to assess Plaintiff's RFC if she stopped using drugs. She concluded that Plaintiff would continue to have severe impairments, but those impairments or combination of impairments would not meet or medically equal a Listed impairment.  Tr. at 23.  The ALJ found that if Plaintiff stopped using opioids, she would have the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can lift and carry frequently twenty pounds, but nothing over twenty pounds; she can perform frequent but not constant handling, fingering, and feeling; she cannot climb ladders; she cannot be exposed to unprotected heights and cannot climb scaffolds; she can occasionally climb steps, balance, and crawl; she can be exposed only occasionally to cold environments, dust, and odors; she cannot operate motor vehicles; and she can engage in simple, routine work.  Tr. at 25-30.

Continuing to the fourth step, the ALJ found that if Plaintiff stopped using drugs, there would be a significant number of jobs in the national economy that the claimant could perform, including the jobs of fast food worker (DOT 311.472-0100), and deli clerk (DOT 316.684-014).  Tr. at 31.  Because Plaintiff would not be disabled if she stopped using substances, the ALJ concluded, her substance use disorder was a contributing factor material to the determination of disability.  Tr. at 31.  Therefore, she was not under a disability at any time from the alleged onset date through the date of the decision.  Tr. at 31.

7

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 7, 13.  Plaintiff argues that the ALJ erroneously rejected a letter from Plaintiff's Licensed Mental Health Counselor, Paul Cartone, pursuant to the five day rule, Dkt. No. 7-1, pp. 18-23, and failed to provide good reasons for rejecting the opinion of Francis Ilozue, MD, Plaintiff's treating physician, Dkt. No. 7-1, pp. 23-29.  The Commissioner argues that the ALJ properly rejected Mr. Cartone's letter, and gave legitimate reasons for rejecting Dr. Iloszue's opinion.  Dkt. No. 13-1, pp. 16-25.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err and that the RFC is substantially supported.

**Five Day Rule**

A claimant must "make every effort to ensure that the [ALJ] receives all of the evidence" in support of his or her claim "no later than 5 business days before the date of the scheduled hearing."  20 C.F.R. §§ 404.935(a), 416.1435(a).  This is referred to as the five day rule.  If the claimant does not comply with the five day rule, the ALJ may refuse to consider the evidence unless an "unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control" prevented her from notifying the ALJ about the evidence or submitting it.  20 C.F.R. §§ 404.935(b)(3), 416.1435(b)(3).  A claimant may avail herself of this exception if she "actively and diligently" sought evidence, but did not receive it until less than five business days before the hearing.  *See* 20 C.F.R.§ 416.1435(b)(3)(iv).

The ALJ conducted two hearings to determine Plaintiff's disability claim, January 5, 2018, and August 3, 2018.  Tr. at 15.  On July 5, 2018, approximately one month before the second hearing, Plaintiff informed the ALJ that she was requesting "records" from certain providers.  Tr. at 395-96.  One day before the second hearing, August 2, 2018, Plaintiff submitted a statement from Mr. Cartone, her counselor.  Tr. at 1863.  Supp. Tr. at 1863.[4]  The statement, dated July 31, 2018, is a one-page summary of treatment that concludes by stating Plaintiff "would be unable to work part time or full time."  Supp. Tr. at 1863.

The ALJ declined to consider the late submitted evidence, reasoning that:

> At the hearing, the representative stated that the letter had just been written (it is dated July 31st); however, he offered no explanation as to why the letter could not have been written prior to the deadline as it was generally a summary of the claimant's treatment and condition.  The representative, who had been afforded ample time to submit treatment records in a timely manner, had not provided the Administrative Law Judge . . . a reasonable explanation of why this statement was not written and submitted timely.  Moreover, no medical records to support Mr. Cartone's conclusions accompanied the statement.  Finally, the representative's letter of July 5 referenced *records* that had been requested; Mr. Cartone's statement is not in the nature of a medical treatment note but was prepared for this litigation and did not exist on July 5, when the representative sent his letter to this office noting outstanding records.  For all of the foregoing reasons, I do not admit this evidence.  The undersigned has reviewed Mr. Cartone's treatment notes in the record, and the rest of the medical evidence in the record, which are, in any event, better evidence of the claimant's conditions.

Tr. at 16.

---

[4] As previously noted, the Supplemental Transcript appears at Docket No. 5.

Plaintiff argues that she could not have submitted Mr. Cartone's letter earlier because it was drafted on July 31.  This argument is unavailing.  As the ALJ noted in her decision and at the hearing, Mr. Cartone clearly wrote the summary at Plaintiff's request.  Tr. 15-16, 121.  If Plaintiff's attorney had requested the opinion in a timely manner, Mr. Cartone would have provided it earlier.  Tr. at 121 ("[I]f you wanted to get that letter before July 31st, you could have gotten it before then.")).  Plaintiff has not shown that she "actively and diligently" pursued the assessment from Mr. Cartone, but was unable to obtain it due to an "unusual, unexpected, or unavoidable circumstance."  Thus, it was appropriate for the ALJ to exclude the evidence under the five day rule.  *See* 20 C.F.R. §§ 404.935(b); 416.1435(b).

The fact that Mr. Cartone drafted the statement within the five days prior to the hearing does not justify making an exception to the exclusionary rule.  The statement was prepared at Plaintiff's request, which was apparently belated.  Plaintiff's representative failed to offer any evidence as to when she requested Mr. Cartone's assessment and what steps she took to get it in advance of the hearing.  It would completely erode the purpose of the five day rule to require an ALJ to accept late records without regard to whether a claimant diligently attempted to submit the records in a timely manner.

Also unavailing is Plaintiff's argument that the statement should be admitted because she provided prior notice that she was seeking existing records from various providers, including Mr. Cartone.  As the ALJ noted, Mr. Cartone's statement did not exist at the time of the notice, and is not itself a record, but a summary.  Therefore, the

10

statement does not fall within the parameters of the notice.  Under the circumstances, this Court finds the ALJ did not err in excluding the evidence under the five day rule.

Plaintiff makes the related argument that because Mr. Cartone's statement was not supported by any records, the ALJ was required to request them.  Although an ALJ has an affirmative duty to develop the record when "obvious gaps" exist, no such gaps exist in this case.  *See Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).  Mr. Cartone's belated opinion that Plaintiff was "unable to work" was based on past trauma in Plaintiff's life, which he summarized in his one-page statement.  Tr. at 1863.  The fact that it was not supported by records does not mean that Plaintiff's mental treatment history had "gaps."  To the contrary, the record contained ample evidence regarding Plaintiff's mental abilities and limitations, including: Mr. Cartone's treatment notes, detailing the anger Plaintiff's family had towards her for bringing a personal injury action against her uncle, her efforts to regain custody of her daughter, and her feeling "tired of going to the methadone clinic" (Tr. at 1522-26); the treatment records of Ms. Kristy Herbert, Plaintiff's substance-abuse counselor, reporting that Plaintiff's methadone was stable, she feels no triggers, she denies being depressed, despite an open Child Protective Services case, and that she does not experience seizures when she is not "using," and detailing several events Plaintiff attended including a funeral in New York City, her brother's wedding, a vacation to West Virginia, and a cruise with her boyfriend (Tr. at 28, 1429, 1430, 1432, 1433, 1434, 1436-37,1439, 1441, 1444-45, 1448, 1449, 1454, 1457, 1460, 1462, 1463, 1466, 1469, 1470, 1473, 1478, 1487, 1490, 1491, 1494, 1496, 1498, 1503, 1505, 1506); and Dr. Gina Zali's January 2016

11

consultative psychiatric evaluation, noting that Plaintiff's demeanor was cooperative, she was responsive, and her manner of relating was fair (Tr. at 30, 753-57).

**Plaintiff's RFC**

RFC represents the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Although the RFC finding is within the province of the ALJ, 20 C.F.R. §§ 404.1546(c), 416.946(c), the burden of proving disability is on Plaintiff.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  An ALJ is not required to determine RFC based on one particular medical opinion.  *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("[T]he fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'").  Rather, RFC is based on all the relevant evidence of record.  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In determining Plaintiff's RFC, the ALJ observed that Plaintiff's mental health improved significantly when she stopped abusing drugs.  Tr. at 26.  Given Plaintiff's history of heroin addiction, the ALJ was required to determine what Plaintiff was capable of when she was using drugs and when she was not.  *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).  Plaintiff repeatedly told Ms. Herbert that she felt better when she stopped using heroin, and that her past drug use interfered with her life and caused her to have seizures.  Tr. at 26, 1429, 1430, 1437, 1439, 1457, 1465, 1469, 1470, 1473, 1474, 1496, 1506.  Plaintiff also told Ms. Herbert that she felt good when she was clean and did not want to use drugs again.  Tr. 26, 1429, 1430.

12

The ALJ also considered Plaintiff's lifestyle since she stopped using heroin, which suggested that she was far less restricted than Mr. Cartone opined.  Tr. at 26.  Plaintiff reported that on some days, she took care of her 8-year-old daughter, which supports a finding of greater mental functionality than Plaintiff claims she has.  Tr. at 26, 1411, 1465, 1506.  Apparently, Plaintiff had the mental wherewithal to travel for vacations to Florida and West Virginia, take a cruise, and attend her brother's wedding and a funeral in New York City.  Tr. at 26, 56-57, 93, 1430, 1436, 1437, 1444-45.  It was permissible for the ALJ to consider Plaintiff's daily life in assessing her RFC.  20 C.F.R. §§ 404.1529, 416.929; *see Cruz v. Colvin*, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017); *Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009).

Moreover, the objective evidence did not demonstrate that Plaintiff was mentally incapacitated from work.  Ms. Herbert reported that Plaintiff maintained eye contact and was polite and cooperative.  Tr. at 1433, 1465, 1466, 1469.  Dr. Zali, the consultative examiner, found that Plaintiff's mood was very anxious, restless, and tangential, but that she demonstrated adequate language, a euthymic mood, intact attention and concentration, and average intellectual functioning.  Tr. at 755.  Dr. Zali opined that Plaintiff was markedly limited at dealing with stress (Tr. at 756); moderately limited at learning new tasks, performing complex tasks, making appropriate decisions, and relating with others (Tr. 756); but only mildly limited at following simple instructions and performing simple tasks (Tr. 756); and not limited at all in following a schedule or maintaining attention and concentration (Tr. 756).  The ALJ gave Dr. Zali's opinion some weight because Plaintiff was still using heroin during the timeframe of Dr. Zali's

13

examination.  Tr. at 30, 1496, 1509.  In this regard, Dr. Zali's opinion was not indicative of what Plaintiff was capable of when she was not abusing drugs.

Dr. Zali herself acknowledged that Plaintiff's symptoms were caused by psychiatric problems **and** substance abuse issues.  Tr. at 756.  This supports the ALJ's logical conclusion that drug use compounded Plaintiff's psychiatric problems.  The ALJ observed that later treatment records, reflecting a period when Plaintiff no longer abused substances, showed improvement in her mental functioning.  Tr. 30, 1429, 1430.  Based on the record in its entirety, the ALJ concluded that when sober, Plaintiff could perform simple, routine work without being off-task for significant portions of the workday.  Tr. 25, 30.  The ALJ accounted for Plaintiff's difficulties dealing with stress, learning new tasks, and making decisions, by limiting her to simple and routine work, "as this type of work is less stressful [because] it does not require learning new tasks or making decisions."  Tr. at 30.

Because the record contained adequate evidence to determine Plaintiff's mental limitations, the ALJ was not obligated to develop further evidence.  *See Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011).  This Court finds no error in the ALJ's rejection of Mr. Cartone's belated statement, her treatment of the record, or her conclusions regarding Plaintiff's mental abilities when she was not using drugs.

14

**The Treating Physician's Opinion**

On October 30, 2017, Plaintiff's primary care physician, Dr. Ilozue, reported to the New York Office of Temporary Disability that Plaintiff was very limited in her ability to stand, sit, lift, carry, push and pull, and maintain attention, and moderately limited in her ability to walk and carry out instructions.  Tr. at 29, 1649-50.  The form consisted of two pages of check-the-box questions.  Tr. at 1649-50.  The ALJ found "this evidence has no probative value because the doctor has not supported it [with] any objective evidence."  Tr. at 29.  Plaintiff argues that this case should be remanded because the ALJ failed to provide "good reasons" for rejecting the opinion of Plaintiff's treating physician.  This Court does not agree.

At the time the ALJ decided Plaintiff's claim, she was required to evaluate medical opinions based on several factors.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (detailing how the Commissioner evaluates opinion evidence for claims filed before March 27, 2017).  When an ALJ decides not to give controlling weight to a physician's opinion, he or she must consider whether the medical source examined the claimant; whether the medical source was a treating source; the extent of the treatment relationship; how well the medical source supported his opinion with relevant evidence; how consistent the opinion was with the record as a whole; whether the medical source was a specialist; and any other factors that supported or contradicted the opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must provide good reasons for the weight given to the opinion.  *Id.*

In her October 2017 assessment, Dr. Ilozue indicated Plaintiff had seizures, migraines, depression, back pain, and other conditions that resulted in significant physical and mental limitations, as detailed above.  Tr. at 1649-50.  The ALJ recognized that Dr. Ilozue was Plaintiff's primary-care physician, but found that her "checklist-style form includes only conclusions without any rationale for those conclusions."  Tr. at 29. Dr. Ilozue's bare conclusions were of little probative value to the ALJ "because the doctor had not supported it [with] any objective evidence."  Tr. at 29.  The ALJ was not erroneous in her reasoning.  *See Camille v. Colvin*, 104 F. Supp. 3d 329, 341 (W.D.N.Y. 2015) (reasoning that opinions that are essentially "form reports composed of checklists and fill-in-the-blank statements," are "by their nature, of limited evidentiary value"), aff'd, 652 F. App'x 25 (2d Cir. 2016); 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Significantly, the ALJ did not merely reject Dr. Ilozue's opinion without further inquiry but twice asked the doctor to provide information in support of her conclusions.  In July 2018, the ALJ asked Dr. Ilozue a series of questions to clarify her conclusions, and requested all treatment records from November 2017 to the date of inquiry.  Tr. at 1780-86.  Dr. Ilozue did not respond.  The ALJ resent her questions in August 2018, again receiving no response.  Tr. at 29, 1828-33.

Because Dr. Ilozue's opinion lacked objective evidence and the doctor failed to respond to the ALJ's requests for more information, the ALJ did not give it controlling weight. Plaintiff argues that the ALJ erred in relying instead on the opinion of Dr. Stevens,

the ME who testified at Plaintiff's second hearing.  Dkt. No. 7-1, pp. 27–29.  Although the opinions of non-examining sources are generally given less weight than examining sources, this is not an absolute rule.  In appropriate cases, a non-examining medical expert may override an examining source, even a treating source, if the opinion is supported by evidence in the record.  *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016); *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016); *Monette v. Colvin*, 654 F. App'x 516, 518-19 (2d Cir. 2016).

Dr. Stevens examined all evidence in the record, spanning the time from when Plaintiff was using heroin and after she stopped.  He testified that Plaintiff's medical conditions included back, leg, and wrist impairments, and cited to the medical evidence indicating that although the impairments were present, they were not debilitating.  Tr. at 103-04.  For example, Dr. Stevens noted that an October 2017 MRI of Plaintiff's lumbar spine showed minimal foramina stenosis and some nerve-root encroachment, but that other objective findings were normal (Tr. 104-05, 1683), and that EMG testing showed mild carpal-tunnel syndrome in Plaintiff's wrists (Tr. 107, 1794).  He opined that Plaintiff's back impairment would prevent her from lifting and carrying over 20 pounds, and her carpal-tunnel symptoms warranted a limitation to frequent handling, fingering, and feeling.  Tr. at 107.  Dr. Stevens also assessed environmental limitations based on Plaintiff's history of seizures and asthma.  Tr. at 107.

The ALJ gave Dr. Stevens's opinion "great weight" because it was based on all evidence and was supported by the record, including the January 2016 consultative evaluation by Dr. Hongbiao Liu.  Tr. 30, 746-50.  Dr. Liu's examination findings were

largely normal.  Dr. Liu observed that Plaintiff had reduced range of motion in her lumbar spine, but retained full range of motion and strength in her arms and legs with intact hand and finger dexterity.  Tr. at 748-49.  Similar to Dr. Stevens, Dr. Liu concluded that Plaintiff had mild-to-moderate limitations for prolonged walking, bending, and kneeling, and had to avoid environmental irritants and hazards due to asthma and her history of seizures.  Tr. at 749.

This Court finds that the ALJ's reliance on Dr. Stevens' opinion over that of Dr. Ilozue was not erroneous.  The mere fact that Dr. Stevens was not a treating physician did not preclude the ALJ from crediting his opinion, because his opinion was consistent with the objective medical evidence.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . , and the report of a consultative physician may constitute such evidence."); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (holding that the ALJ rightly concluded that the two consultative psychologists' opinions that plaintiff was able to perform unskilled work were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

In addition to Dr. Stevens' opinion, the ALJ relied on considerable evidence that Plaintiff's seizures were exacerbated by her drug use.  Tr. at 27, 28, 644, 652, 1485, 1503.  In February of 2018, well into her sobriety, Plaintiff reported to the neurologic consultant, Dr. Michael Battaglia, that she had been seizure-free for months.  Tr. at 33, 1791.  The ALJ noted that Dr. Battaglia recommended conservative treatment for Plaintiff's

18

carpal-tunnel syndrome, suggesting the impairment was not significant enough to warrant surgery.  Tr. at 28, 1795.  This was buttressed by relatively unremarkable objective findings by numerous examiners.  Tr. at 26, 421, 485, 653, 683, 748-49, 1082, 1299, 1792. The ALJ also reasoned that Plaintiff's cigarette use tended to undercut the seriousness of her asthma complaints.  Tr. at 33, 54, 747, 1081.

The Court finds no error in the ALJ's analysis.  "While conservative treatment alone is not grounds for an adverse credibility finding," *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), "the ALJ may take it into account along with other factors."  *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646-47 (S.D.N.Y. 2019), *appeal dismissed* (May 31, 2019); *see also Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (the ALJ was permitted to weigh the claimant's "conservative treatment" regimen in assessing her credibility); *Dixon v. Berryhill*, 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record.") (citations and quotation marks omitted) (collecting cases).

An ALJ may rely on mild or unremarkable diagnostic or clinical evidence to support a finding of not disabled when it is consistent with other evidence in the record. *See Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (affirming a finding of not disabled where the ALJ relied upon an MRI showing only mild or unremarkable findings along with medical records from examining and non-examining physicians consistent with those findings).  Moreover, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent

record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.").

Based on the evidence as a whole, the ALJ found that Plaintiff had the physical RFC to perform a range of light work.  Tr. at 25; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining light work).  Consistent with Dr. Stevens' testimony, the ALJ limited Plaintiff to occasional climbing, balancing, and crawling with frequent (but not constant) handling, fingering, and feeling.  Tr. 25, 105-06. The ALJ also assigned environmental limitations to account for seizures and asthma, consistent with Dr. Stevens' and Dr. Liu's conclusions.  Tr. at 25, 107, 749.

It is the ALJ alone who determines the RFC based on the medical record.  20 C.F.R. § 416.946(c).  The law is clear that an ALJ's RFC finding does not need to be based on a particular medical opinion or medical source statement.  *Monroe v. Berryhill*, 676 F. App'x 5, 9 (2d Cir. 2017); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (reasoning that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in h[er] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole").  Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once

an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**." *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            February 26, 2021


            *s/ H. Kenneth Schroeder, Jr.*
            **H. KENNETH SCHROEDER, JR.**
            **United States Magistrate Judge**